MONCURE, B.,
delivered the opinion of the court:
Two cases have been decided by this court, which have a material bearing on the one now under consideration, viewing it as a suit in equity for the settlement of a partnership account, and without reference to the effect of the settlement, which will be presently mentioned. Those cases are Coalter v. Coalter, 1 Rob. R. 79, decided in 1842, and Marsteller v. Weaver’s adm’x, 1 Gratt. 391, decided in 1845. In the former it was held, .first, that an action of account by one partner against his co-partners for a settlement of the partnership accounts, must be commenced within five years next after the cause of action accrued, and unless so commenced will be barred by the statute of limitations—1 R. C. 1819, ch. 128, § 4, p. 488; for such accounts do not concern the trade of merchandise between merchant and merchant, and therefore are not embraced by the exception to the statute; and secondly, that a suit in equity between such parties for such a settlement, being a substitute for the action of account, should, like that action, be brought within five years, and if not brought within that time, will be barred by the statute of limitations. In the *latter it' was held that in such a suit the plea of the statute of limitations cannot be sustained where it appears that there were good debts due to the firm outstanding within five years before the suit was brought.
The business of the partnership in this case commenced in March, 1837, and ended in March, 1839. The original suit for the settlement of the account was brought in December, 1856, and would have been barred by the statute of limitations according to the case of Coalter v. Coalter, but for the fact that there were debts due to the firm outstanding within five years before the suit was brought, one or more of which appear to have been good; and it appears also that during that period one or two debts due by the firm were paid; under which circumstances it seems that, according to the case of Marsteller v. Weaver’s adm’x, the suit would not be barred by the statute, at least as it stood in the Revised Code of 1819.
How far does the change made of that statute by the Code of 1849, ch. 149, fj 5, affect this case? The Code provides that an. action by one partner against his co-partner, for a settlement of the partnership accounts, may be brought until the expiration of five years from a cessation of the dealings in which they are interested together, but not after. The time prescribed by the statute does not begin to run as to any of the partnership dealings until there has been a cessation of all of them. But what acts are comprehended in the word “dealings”' in the meaning of the Code, may be a question of some doubt. Is the word confined to the active operations of the partnership during its continuance, or does it embrace also any act done after its dissolution in winding it up; such as the collection or payment of outstanding debts due to or by the firm, and even good debts due to the firm, outstanding when the suit is *brought? I think the word should be construed in "the latter and extended sense; otherwise no action or suit could be brought for a settlement of a partnership account after the lapse of five years from the dissolution of the partnership, although its business may not have been wound up for a long time thereafter. I therefore think that the cases of Coalter v. Coalter, and Marsteller v. Weaver’s adm’x, apply to the statute of limitations as it now stands in the Code of 1849, as much as they did to the statute as it stood in the Revised Code of 1819.
The statute of limitations not being a bar to the suit, it seems to follow, as a necessary consequence, that laches and lapse of time constitute no such bar; but they may, notwithstanding, have a material effect in deciding upon particular claims which may be asserted in the course of the settlement of the partnership account. Of course I do not mean to say that laches and lapse of time constitute no bar in any case in which the statute does not constitute one. When the statute is a bar there is no need of any bar from laches or lapse of time. The latter bar peculiarly applies where the former does not. Wha.t I mean to say is, that if the cause of action be one to which the statute applies, but the lapse of time since it accrued be not such as to bring the case within the statute, laches and lapse of time cannot in themselves constitute a bar to the suit. Though the time prescribed by the statute may not begin to ijin until the business of the partnership is wound up, yet the parties may have a partial settlement of the partnership account before, and may bring a suit for such a settlement. It is not necessary that a suit for a settlement *371 of the partnership account should be delayed until all the debts due to the firm have been collected, and all due from it have been paid. Circumstances may delay the collection of a debt until long after all the other business of the partnership *has been wound up. Such delay may result from the gross negligence of the partner charged with the duty of winding up the business. In such a case, although a suit for a settlement, even by the partner guilty of such negligence, may not be barred by the statute of limitations until five years after the collection of all the good' debts due to the firm, 'yet it is the duty of a partner, claiming that a balance will be due to him upon a settlement of the partnership account, to have such a settlement as far as possible, and if necessary to bring a suit for that purpose before the lapse of time and loss of evidence and death of parties render it impossible or difficult to have a just settlement; and if he fail to do so, he must abide the consequences of his laches, and bear the loss resulting therefrom. ¡Doubtful questions, made so by his laches, must be solved against him.
Where there has been a partial settlement of a partnership account, and there is no valid objection to the settlement, it is conclusive upon the parties to it as far as it goes, and leaves open only the unsettled portion of the account. The time prescribed by the statute of limitations begins to run at the time of the settlement against the cause of action arising therefrom, but the transactions not embraced in the settlement remain unaffected by the statute, as if the settlement had never been made.
In this case there was a settlement on the 12th day of March, 1845, between John W. Foster, acting for himself and Marsten Foster, and William Rison, witnessed by an agreement in writing under the hands and seals of the parties, and described in said agreement as “a full settlement” of the partnership: upon which settlement said Rison executed his bond for the sum of $575.75, in full of all demands which said John W. and Marsten had against said Rison on account of said partnership, except a certain acceptance due said John W. and a certain ^balance due said Marsten, as mentioned in said agreement; in consideration of which bond, the said Fosters transferred a parcel of debts to the said Rison due to the said firm, amounting to $897.21, which he agreed to take without recourse to the said Fosters; and he further agreed to release and discharge the said Fosters from all debts due from the said firm, “which have been created by the said Rison, he having the entire management of said firm and taking the payment of the same upon himself; a parcel of debts due the said firm, amounting to some $1,532.70, which are considered as insolvent, are to be left’ with the said William Rison for collection, which when collected, or any portion thereof, are to be divided equally between the said Fosters and the said Rison; that is one-third to each; any costs attending the collection of any of stich last referred to debts, shall be deducted from any ampunts collected, or be paid by the parties equally.”
This agreement, if valid, was a full and: final settlement of the partnership account, at least as between said Fosters and Rison,, except as to the parcel of debts due the said firm which were considered as insolvent,. And in order to succeed in this'suit for a general settlement, William Rison and Marsten Foster, or his representative, must therefore, in some way, get rid of the said agreement.
How do they seek to get rid of it? On two grounds: First, on the ground that it was not authorized by Marsten Foster, but made without his consent or knowledge; and secondly, on the ground that material mistakes and omissions were made in the settlement to the prejudice both of Marsten Foster and William Rison.
I will examine these objections in their order; and, first, that the agreement was not authorized by Marsten Foster. If it ip charged, it certainlj' is not proved, that J. W. Foster was guilty of any fraud in making the settlement. *To justify his conviction of such a fraud it ought to have been expressly charged and clearly proved. He made the settlement in behalf of himself and his brother, with his nephew. In making it with his nephew he was dealing with one who was the only acting partner of the concern ; had kept and was still in possession of all its books and papers, and was better informed about its affairs than any other person. The two brothers lived in Amelia county, and the nephew at Pittsylvania courthouse, where the business had been conducted, where the settlement was made, and where the books and papers were at the time of the settlement. Fvery circumstance of the case repels the idea of fraud. The question then is merely one of authority. Was J. W. Foster authorized by Marsten Foster to make the settlement? It was made under hand and seal, and there is no evidence of any authority under the hand and seal, or even the hand of Marsten Foster to make it. It is not probable that any such author^ was in fact given. Nor was it necessary. J. W. Foster had no right to execute a deed for Marsten Foster without authority by deed; but he had a right to make a settlement for him under' a parol authority if he had such authority, and such a settlement, if made, would not be invalidated bjr any instrument purporting to be a deed with which it might be accompanied. The instrument might be void as a deed and still be good evidence of the terms of the settlement. Nor was.it necessary that the authority to make the settlement should have been express. It may have been implied from the relations' and previous dealings of the parties, especially in reference to the subject of the settlement.
(The judge then proceeded to consider the evidence on the subject; and then proceeded as follows:)
*372 I am therefore of opinion that J. W. Foster had authority from Marsten Foster, expressed or implied, to make *the settlement, and that after so great a lapse of time and so much laches on .the part of Marsten Foster, and after the death of J. W. Foster, it would be against the policy of the law to disturb it on the ground that it was made without authority. If it can be clearly shown that there were any mistakes or omissions in the settlement, and that they can now be corrected without doing injustice to any party, they ought to be corrected accordingly. But that can and ought to be done without disturbing the settlement further than may be necessary for the purpose of such correction. In that way Marsten Foster will get the full benefit of the correction without losing the benefit of the settlement, and William Eison will, get all the benefit he is entitled to; for in no view of the case can he object to the settlement except on the ground and to the extent of such mistakes or omissions, so far as his interest may be affected by them. And this brings me to the next enquiry, which is,
Secondly — Were any mistakes or omissions made in the settlement to the prejudice of Marsten Foster and William Eison, or either of them?
It is a curious fact, that neither in the original bill nor in the answer of Marsten Foster -thereto, is' there any complaint of any such mistake or omission. In these the settlement is impeached only on the ground of want of authority, as before' stated. In the cross-bill filed in October, 18S8, after the death of Marsten Foster and by his executor, errors in the settlement are, for the first time, charged, and the charge is repeated in the answer of Wm. Rison to the cross-bill.
(The judge then proceeded to consider the first error in the settlement alleged to have been made. This relates to the two sums of $615.25 and.$294.43, which it was claimed should have been credited to Marsten Foster. He then proceeded as follows:) *But if J. W. Foster did receive these two sums from his brother to be paid to Wm. Eison on account of the firm and failed to make such payment, the firm is not accountable for them to Marsten Foster; but his only recourse is against J. W. Foster individually. Whether J. W. Foster is liable for them or not is a question not in issue in this cause.
The next error alleged in the settlement is, that John W. Foster was credited with $975 as for merchandise put in by him from Clarksville.
(The judge then proceeded to consider the evidence in relation to that alleged error.. He .then proceeded as follows:)
It is possible, after all, that the account given Of this matter in the examination of Wm. Rison is the true one, and that the credit of $975 given to J. W. F. in the settlement was in fact given by mistake. But whether the fact be so or not, I think it is not proved by that degree and amount of | evidence which ought to be required under the circumstances, and that in attempting to correct such supposed mistake, there would be. danger of doing injustice to the estate of J. W. Foster. Ten years elapsed after the settlement was made and before the death of J. W. Foster, during which time nothing was said about any mistake in the settlement, nor until more than a year thereafter when the original bill was filed. Had the suit been brought in his lifetime he might have explained the transaction as he was a party to it, and probably knew, or had the means of showing, all about it. At all events he would have had the benefit of his answer. I am therefore of opinion that it would be against public policy and the principle of our decisions on the subject to afford relief in such a case, at least without the strongest evidence to sustain the claim. As was said by Allen, J. (with whom the rest of the court *concurred), in Caruther’s adm’rs v. Trustees of Lexington, 12 Leigh 610, 619, “no particular period is fixed by the cases as limiting the demand for an account. If from the delay which has taken place, it is manifest that no correct account can be rendered, that any conclusion to which the court can arrive must be at best but conjectural, and that the original transactions have been so obscured by time and the loss of evidence, and the death of parties, as to render it difficult to do justice, the court will not relieve. It is the duty of the plaintiff in equity, as well as at law, to establish his title to the relief sought for by satisfactory proof; it will not answer to show a probable title to something. He must satisfy the court that it can extend relief -without the hazard of doing injustice to the defendant.”
The only remaining error alleged in the settlement is as to the charge to Wm. Eison of $220.65 and $347.31 for interest on the balance of capital not returned to his partners. It is a sufficient answer to this objection that the matter' was agreed in the settlement, and is concluded by it if the settlement be valid and binding, as I think I have shown that it is; at least as between the Fosters and Eison. The exception of Eison to the commissioner’s report, which was overruled by the court below, rests on the same principle with the objection just disposed of. The court below sustained the appellants’ fifth exception to the commissioner’s report, “because the commissioner has allowed to the said Wm. Rison the sum of $503.08 commission for collecting the debts of said concern of Wm. Eison & Co. ;” and the counsel for Rison complains that this was error. The same answer may be made to this objection as to the one just disposed of, that the subject of it is concluded by the settlement.
I have now fully considered the case so far as Wm. Rison is concerned, and so far as it is affected by the ^settlement. But Marsten Foster’s executor contends that the settlement was only of the partnership account as between the Fosters *373 and Rison, and not as between the Fosters inter se; and that the estate of John W. Foster is largely indebted to the estate of M. Foster on account of money received by the former from the latter, to be applied to the credit of the latter in making up the capital of the concern but not so applied; and on account of money received by the former out of the partnership assets over and above the proportion to which he was entitled. The object of the cross-bill was to ascertain and recover the amount of this claim and to have the proper account settled for that purpose. I will now proceed to consider this part of the case.
The only money charged to have been received by J. W. Foster from M. Foster, on account of the partnership, was the two sums of $615.25 and $294.43 received in April and May, 1837, which have already been the subject of observation in this opinion. And in regard to those two sums of money, as well as any money which John W. Foster may have received from William Rison for Marsten Foster on account of the latter’s interest in the partnership assets, Marsten Foster, to the extent of any just claim he may have had thereto, had a legal remedy for the recovery thereof, which has been long since barred by the statute of limitations. There was no partnership between John W. and Marsten Foster; so that the account between them does not stand on the footing of a partnership account, though it may be composed of items for money received by one on account of the interest of the other in the partnership assets. The case stands upon the same footing with any other case in which money is had and received by one party for and at the instance and request of another. I have already, I think, shown, that whatever money *may have been received by John W. for Marsten Foster on account of the latter’s interest in the partnership assets, was received by his authority, express or implied. Nor is this a case in which an action of account would lie, and to which, therefore, the legal limitation to that action applies, even though the suit be in equity. It is not eyen such a case as to give jurisdiction to a court of equity on the ground of mutual account.' The account consists altogether of items on one side, for money alleged to have been received by one party for another. A portion of this money, to wit: the two sums of $615.25 and $294.43, is alleged to have been received in April and May, 1837, more than twenty-one years before ,the cross-bill was tiled, in October, 1858. Another portion is alleged to have been received in 1840, when payment was made for the goods sold by W. Rison & Co. at the time of their dissolution to Rison & Poindexter, more than eighteen years before the cross-bill was filed. Nothing was ever received by John W. Foster on account of the partnership assets, for himself or any other person, after the settlement of March, 1845, except on account of the bond for $575.75 taken upon that settlement, which was made more than thirteen years before the cross-bill was filed. And nothing has been received on account of that bond but $406, which was paid in March, 1846, more than twelve years before the ' filing of the cross-bill.' This was the last payment made to John W. Foster on account of the assets of the partnership, on which can be founded any pretense of a right of action against him or his personal representative, for money had and received to the use of Marsten Foster. This is not a case of trust which would give a court of chancery jurisdiction, and to which the statute of limitations does not apply. If it be said that a resort to a court of chancery might have been necessary to have an ^account taken to ascertain the portion of the money received by John W. Foster on account of the .partnership assets to which Marsten Foster was entitled ; still that would not take the case out of the operation of the statute which applies to an action for money had and received. The equitable, suit in such a case would be only incidental and ancillary to the legal demand, and would be barred by the statute which bars the legal demand. It would not be like an ordinary suit to settle a partnership account, which wotild not be barred by the statute, unless five years had elapsed after the “cessation of the dealings” in which the partners were “interested together” and before the institution of the suit. If a partnership, after the close of its active operations, be in a course of liquidation and settlement, and the acting partner, charged with the duty of winding up the concern, make a payment to another .partner for himself and a third for whom he is acting,, the third partner has an immediate cause of action for his part of the payment against the partner to whom the payment was , made, and prima facie, they would be entitled to the amount equally. They might, under the circumstances, be entitled to it unequally, and an account might be necessary to ascertain their several portions; but they ought to proceed with due diligence to have the account settled,, and a suit for such a settlement must be brought within the period limited by law for the bringing of an action for the money.
The settlement of March, 1845, was a full and final settlement of the partnership account between the Fosters who contributed the capital and Rison the only acting partner, with the single exception of the debts due to the concern, which were considered as insolvent, : amounting to $1,532.70, and which were left with said Rison for collection on the joint and equal, account of the parties. They remained partners only . in regard to the matter of *that exception, as to which only an account between them may now be called for. If John W. Foster became indebted to Marsten Foster on account of, or in regard to, the partnership, it was for money had and received to his use; and the cause of action therefore arose at least as far back as the time-of the settlement in March, 1845, and *374 so was barred by the statute of limitations when the cross-bill was filed in October, 1858, unless the bar of the statute can be repelled upon the ground of fraud or concealment upon the part of John W. Roster. The statute applies as well to a suit in equity for an account of such money as to an action at law for its recovery; and the bar of the statute cannot be prevented or affected by the fact that debts due to the partnership and included in the insolvent list at the time of the settlement, have since been or may hereafter be collected. Those debts have no connection with any debt of J. W. to Marsten Roster for money had and received to the latter’s use as aforesaid.
Then the only remaining question is, was there any fraud or concealment on the part of J. W. Roster in regard to any money received by him for M. Roster on account 'of the partnership? If there was, and the effect of such fraud or concealment was to keep M. Roster in ignorance of the receipt of such money, or prevent him from suing for it, until within five years before the filing of the cross-bill, then the statute of limitations is not a bar to the suit. The mere fact that Marsten Roster was ignorant of the existence of any debt which may have been due to him by J. W. Roster until within five years before the institution of the suit, will not be sufficient to repel the bar of the statute. To have that effect, such ignorance must proceed from the fraud of J. W. Roster, which ought to be plainly charged by the pleadings, and clearly shown by the proofs. The charge of fraud in this case *is not as plain as it might be. To be sure the said John W. is substantially charged in the cross-bill with “secretly and wrongfully obtaining possession of much the greater part of the partnership assets and concealing the same from the said Marsten and failing to render an3’ account thereof,” but the complainant expresses a hope that such failure to account was “through accident or forgetfulness.” The cross-bill, too, was filed, not by Marsten Roster, but by his executor, who could have had no personal knowledge of the fact of fraudulent concealment therein charged. The answer to the original bill was filed by M. Roster himself, and contains no charge of fraud or concealment. But admitting the fact to be sufficiently charged, as it no doubt is, in the bill, it is certainly not proved, and there is no evidence in the cause which even tends to prove it. The case then stands upon a mere charge of fraud, made by a personal representative knowing nothing about the fact, and after the death of the party charged with the fraud, whose personal representative knows nothing about it, and without a particle of 'evidence to sustain the charge. In perfect consistence with all the evidence in the case, John W. Roster may have promptly ■and regularly communicated to his brother all his transactions on their joint account in regard to the partnership, and accounted with him for all the money received on his | account. Is not such a mere charge, unsupported by evidence, plainly insufficient to repel the bar of the statute? I think it is. Had the charge been made by Marsten Roster against John W. Roster in the lifetime of both, it might have been denied in the answer on oath of the latter; and it could then have been sustained only by at least two witnesses, or one and pregnant circumstances. The charge having been made after the death of both', in a suit between their representative having no personal knowledge of the transaction, it ought to be sustained by *at least one witness to have any effect, especially after so great a lapse of time and so much laches on the part of Marsten Roster.
Something may be due: I might go farther and say that probably something is due from the estate of John W. to the estate of Marsten Roster oh account of the transactions stated in the bill. But the possibility or even probability that something is so due, is not enough to entitle the plaintiff to an account. Independently of the bar of the statute, it would be a sufficient answer to his claim for an account, that one cannot be now settled with any- reasonable expectation of doing justice to the defendant, and that the plaintiff’s testator is in fault for not having sooner asserted and prosecuted his claim. It may be said that John W. Roster was also in fault, for not having himself rendered and settled an 'account. Non constat that he di(jl not render and settle an account. He is not now here to speak for himself. But concede that he was equally in fault with the other partners, that is not enough to make him liable. In such a state of equality the condition of the defendant is better than that of the plaintiff. It may be further said, that Marsten Roster did not know that anything was due to him until shortly before the institution of the suit, and was led to believe the contrary. It certainly does not appear, as I have already shown, that John W. Roster led him to such belief, or did anything to conceal or cover up the transaction. Marsten Roster knew that he was a partner in the concern, and it was his business to enquire into it and inform himself of its condition. If he chose to depend upon another to do this for him, he must take the consequence of neglecting his own duty, and having lost his opportunity by delay he cannot excuse himself on the ground of want of information, unless it proceeded from the fraud of his adversary, which must be proved. Vigilantibus *non 'dormientibus jura subveniunt, is a favorite maxim in a court of equity'. The principles which govern that court in this respect are beautifully set forth by 'Rord Camden in the often cited case of Smith v. Clay, 3 Br. Ch. R. 640. “Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. When these are wanting, the court is passive and does nothing. Raches and neglect are always discountenanced.” Most of the English and American cases on this subject are *375 referred to in a note to 2 Story’s Eq. § 1520. See also Carr’s adm’r v. Chapman, 5 Leigh 164, and the cases therein cited. In Carr v. Chapman, J udge Carr says: ‘1 Th e principles deduced from the English cases are fully supported, if not advanced a step, by the spirit of our own decisions and of our legislation also.” Id. 178. Our subsequent decisions on the subject or some of them are : Hayes v. Goode, 7 Id. 452; Atkinson v. Robinson, 9 Id. 393; Caruther’s adm’r v. Trustees of Lexington, 12 Id. 610; Hillis v. Hamilton, 10 Gratt. 300; Crawford’s ex’or v. Patterson, Id. 364; Doggett v. Helm, supra.
Upon the whole, I am of opinion that the decree should be reversed and all of the bills dismissed with costs; but without prejudice to any claim which the representatives of John W. and Marsten Roster or either of them may have for an account of the debts due to the firm of William Rison & Co., which were considered as insolvent and left in the hands of William Rison for collection at the time of the settlement of the 12th of March, 1845; and also without prejudice to any claim the representative of said Marsten may have to the balance or any part thereof due upon the bond for $575.75 given upon the said settlement by the said Rison to the said John W. and Marsten Roster.
Decree reversed.